# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

FILED

—oOo—

SEP – 1 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES OF AMERICA

v.

Mark Anthony NINO DE RIVERA

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER:

*1:11-mJ-00177-SMS*

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about August 18, 2011, in Fresno County, in the Eastern District of California defendant,

▸ **COUNT I: Making materially false statements to U.S. law enforcement officers**

did knowingly and willfully make materially false, fictitious, or fraudulent statements to federal law enforcement agents.

in violation of Title 18, United States Code, Sections 1001(a)(2) punishable by a maximum of 5 years imprisonment I further state that I am a(n) Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives and that this complaint is based on the following facts:

▸ See Affidavit of Special Agent Ryan Stearman, attached hereto and incorporated herein.

X Continued on the attached sheet and made a part hereof.

Signature of Complainant Ryan Stearman
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn to before me, and subscribed in my presence

September 1, 2011                                    at    Fresno, California

Date                                                         City and State

Sandra M. Snyder, U.S. Magistrate Court Judge

Name and Title of Judicial Officer                 Signature of Judicial Officer

1  **AFFIDAVIT OF SPECIAL AGENT RYAN STEARMAN**

2  I.

3  **INTRODUCTION.**

4      I, Ryan Stearman, being first duly sworn, hereby depose and
5  state:

6      1.   I am a Special Agent of the U.S. Department of Justice,
7  Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).  I have
8  been so employed since September 2005.  In the course of my duties as
9  an ATF Special Agent, I have conducted numerous investigations and
10 received training regarding, but not limited to, the trafficking and
11 possession of firearms by prohibited persons and the illicit
12 distribution and possession of controlled substances by various
13 individuals.  As a result of said investigations, I have obtained and
14 executed numerous federal arrest and search warrants.  I am currently
15 assigned to the ATF Fresno Field Office.

16     2.   Title 18, U.S.C., Section 1001(a)(2) makes it unlawful for
17 any person to make any materially false, fictitious, or fraudulent
18 statement or representation regarding any matter within the
19 jurisdiction of a department or agency of the United States.

20     3.   This affidavit is in support of a complaint charging Mark
21 Anthony NINO DE RIVERA (hereinafter NINO DE RIVERA; aka Mark NINO)
22 with a violation of Title 18, U.S.C., Section 1001.  On August 31,
23 2011, NINO DE RIVERA did knowingly make false statements to ATF
24 agents regarding telephone calls made and received by NINO DE RIVERA
25 during which NINO DE RIVERA discussed the possible acquisition and
26 location of machineguns that were stolen on or about July 15, 2011
27 from a U.S. Army base at Fort Irwin, California.  The information set
28 forth in this affidavit is not intended to detail each and every fact

1

and circumstance of the investigation or all information known to me and other law enforcement investigators. Rather, this affidavit serves to establish probable cause for the arrest of NINO DE RIVERA.

4.   On or about July 15, 2011, a theft of 26 AK-74 machineguns occurred on a U.S. Army base located at Fort Irwin, California. Subsequently, ATF agents have recovered several of the stolen machineguns from various individuals in the Fresno, California area.

5.   Through interviews with individuals who had purchased, had been involved in the sale of, or had knowledge of the stolen machineguns, agents learned that John Rodriguez stored approximately 12 of the stolen machineguns at 2510 S. 9th Street, Fresno, CA, the residence of his cousin, Nicole PEREZ and her boyfriend Mike ODEH.

6.   On July 27, 2011, ATF served a search warrant at 2514 S. 9th Street, the residence of Raymond Galvan LORONA, which is situated next door to 2510 S. 9th Street.  I and other agents spoke with ODEH and PEREZ on several occasions, and both said that they were at 2510 S. 9th Street when the search warrant was served, and became concerned that their residence may be targeted as well.

7.   ODEH and PEREZ told me and other agents that on July 27, 2011, they contacted Christopher SCHRINER (aka "CJ"), who was a close friend of the couple.  ODEH and PEREZ said that they told SCHRINER of their concerns and that they needed to get rid of the guns in their home.  They said that SCHRINER said he would take care of it.  ODEH and PEREZ said that the following day when they returned from work, the guns were gone.  They said that they then spoke with SCHRINER who said that the guns were gone, and the less they knew the better.

8.   I reviewed toll records for SCHRINER's cellular telephone. On July 27, 2011 and the days following, SCHRINER had placed or

received multiple calls with a phone subscribed to by NINO DE RIVERA.

9.   On August 31, 2011, ATF Special Agent (SA) Justin Quinn and I interviewed NINO DE RIVERA regarding his possible involvement in the possession of such weapons.  This interview was video recorded. NINO DE RIVERA was advised of his rights pursuant to Miranda and knowingly and voluntarily waived said rights.  SA Quinn immediately advised NINO DE RIVERA that providing false statements to federal agents was a violation of federal law.  NINO DE RIVERA stated that he understood and was aware that SA Quinn and I were ATF agents. Initially during the interview, NINO DE RIVERA stated, among other things, that he had no knowledge of any stolen firearms and that he had never had a personal cellular telephone.  It was only after I informed NINO DE RIVERA that I had identified a telephone number subscribed to him and that said telephone number had multiple contacts with a telephone number utilized by NINO DE RIVERA'S brother, who provided me with his telephone number prior to the interview, that NINO DE RIVERA later admitted to SA Quinn that the telephone number was indeed assigned to a cellular telephone that he utilized on a regular basis for several years.

10.   During this interview, SA Quinn and I questioned NINO DE RIVERA regarding any contact he may have had with SCHRINER.  NINO DE RIVERA initially stated that he had limited contact with SCHRINER and had not spoken with him in years.  NINO DE RIVERA later told SA Quinn he had seen SCHRINER a few months prior, but had not talked to SCHRINER on the telephone "in years."  When asked if he knew SCHRINER by any other names or nicknames, NINO DE RIVERA stated he did not but later in the interview began to refer to SCRINER as "CJ."  When confronted with the fact that he was referring to SCHRINER as "CJ,"

3

1  NINO DE RIVERA then admitted that he also knew SCHRINER as "CJ."

2      11.   Later in the interview, SCHRINER was brought into the

3  interview room with NINO DE RIVERA.  It was during this time that

4  NINO DE RIVERA admitted to agents that he had conducted more than one

5  telephone call with SCHRINER during which the two discussed the

6  availability of the stolen firearms.  NINO DE RIVERA admitted that he

7  had seen media coverage of the firearms theft and knew the firearms

8  had been stolen and had called SCHRINER to confirm that the firearms

9  featured in the news were the same firearms the two had previously

10 discussed.  However, NINO DE RIVERA denied that he had conducted any

11 other telephone calls with SCHRINER.

12      12.   On August 31, 2011, I reviewed cellular telephone toll

13 records for July 2011 obtained by federal court orders for both

14 SCHRINER and NINO DE RIVERA'S cellular telephone numbers.  The

15 cellular telephone utilized by SCRHINER was seized during the

16 execution of a federal search warrant related to this investigation

17 at SCRHINER'S residence.  SCHRINER admitted to the telephone

18 belonging to him.  The telephone number utilized by NINO DE RIVERA is

19 subscribed to him with the same address listed on NINO DE RIVERA'S

20 California driver's license issued by the California Department of

21 Motor Vehicles.  NINO DE RIVERA'S telephone number was also listed in

22 SCHRINER'S cellular telephone under the listing of "Nino."  From July

23 18, 2011 to July 30, 2011, there were 19 telephone calls placed or

24 received between NINO DE RIVERA and SCHRINER'S telephone numbers.

25 Specifically, 17 of the 19 aforementioned telephone calls occurred

26 between July 27, 2011 and July 30, 2011.

27 ///

28 ///

4

1        13.   I declare under penalty of perjury that the statements

2    above are true and correct to the best of my knowledge and belief.

3

4

5

6

7                                    _____
                                     Special Agent Ryan Stearman
8                                    United States Department of Justice
                                     Bureau of Alcohol, Tobacco,
9                                    Firearms & Explosives

10

11   Sworn and subscribed to before me
12   September ___, 2011
13
14   Honorable Sandra M. Snyder
     United States Magistrate Judge
15   Eastern District of California

16

17

18

19

20

21

22

23

24

25

26

27

28

                                     5